UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLYNN SPENCER,

                      Plaintiff,

              v.

SULLIVAN COUNTY, *et al.*,

                    Defendants.

No. 18-CV-365 (KMK)

OPINION & ORDER

Appearances:

Glynn Spencer
Rome, NY
*Pro Se Plaintiff*

Cheryl A. McCausland, Esq.
Dante David De Leo, Esq.
Sullivan County Attorney's Office
Monticello, NY
*Counsel for Defendant Sullivan County and Robert B. Cintron*

Michael Davidoff, Esq.
Drew, Davidoff & Edwards Law Offices, LLP
Monticello, NY
*Counsel for Defendant Sgt. Starner*

KENNETH M. KARAS, United States District Judge:

Glynn Spencer ("Plaintiff") brings this pro se Action, pursuant to 42 U.S.C. § 1983, against Sullivan County ("Sullivan") and Robert B. Cintron ("Cintron") (together, "County Defendants"), and Sgt. Starner ("Starner") (collectively, "Defendants"), alleging that Defendants violated his rights under the Fourth and Eighth Amendments in connection with an October 11, 2017 arrest and related searches. (*See generally* Am. Compl. (Dkt. No. 23).) Before the Court are Defendants' Motions To Dismiss the Amended Complaint. (*See* County Defs.' Not. of Mot.

(Dkt. No. 45); Starner Not. of Mot. (Dkt. No. 41).)  For the reasons that follow, the Motions are granted in part and denied in part.

## I.  Background

### A.  Factual History

The following allegations are drawn from the Amended Complaint, and are taken as true for the purpose of resolving the instant Motions.

On October 11, 2017, Plaintiff was a passenger in a car that was stopped by Starner and Cintron "for a suppose[d] tail light out." (Am. Compl. 1.)  Starner told Plaintiff to get out of the car, take everything out of his pockets, and submit to a search of his person. (*Id.*)  During the search, Starner allegedly grabbed Plaintiff's genitals. (*Id.*)  Plaintiff "jump[ed] from the force and pain," and told Starner, "that was my dick." (*Id.*)  Plaintiff "was told to turn around and shut up," and then Starner allegedly "grabb[ed] [Plaintiff's genitals] twice again[,] causing [him] to jump from the force and pain." (*Id.*)  Starner then allegedly grabbed Plaintiff's pants, and "pulled them up [his] . . . ass . . . hard, pulling [him] up on [his] toes." (*Id.*)  Plaintiff yelled to Starner, "yoo that's going up my ass." (*Id.*)  Starner told Plaintiff to shut up and turn around, "pulling [his] pants up [his] ass twice more for no apparent reason." (*Id.*)

Afterward, Plaintiff was "taken to the barracks," where he was asked a few questions and then placed in a small room and handcuffed to a bench. (*Id.* at 3.)  Plaintiff fell asleep "for 2–3 hours," and when he awoke he was told to "come upstairs to make a statement." (*Id.*)  Plaintiff was "read[] [his] rights" and confirmed that he understood them. (*Id.*)  Plaintiff was asked where he lived, and he responded that he did not "want to talk on camera." (*Id.*)  F.B.I. Officer Ramos ("Ramos") told Plaintiff that he "had to, that [there] was [no] other way," and Plaintiff responded that he had "nothing to say." (*Id.*)  Plaintiff was taken back downstairs and returned to the same

small room and handcuffed to the bench, where he remained "for maybe a[n] hour or more." (*Id.*)

Starner woke Plaintiff up and said that he had to submit to another pat down, and that afterward he would be strip searched. (*Id.*) Starner directed Plaintiff "to get on the wall to be frisk[ed] again." Plaintiff asked, "isn't this against the law?" (*Id.*) Starner said that it was not, and ordered him to "get on the wall." (*Id.*) Cintron and another unnamed deputy were present with Starner when this took place. (*Id.* at 4.) While Plaintiff was against the wall, Starner "grab[bed] [Plaintiff's] pants and pulled them up [his] ass." (*Id.*) Plaintiff "turn[ed] around and yell[ed], 'yoo that's going up my ass.'" (*Id.*) Plaintiff alleges that Starner told him to "turn around and shut up," and "pull[ed] [his] pants up [his] ass twice more[,] looking [him] in [his] eyes [and] smiling at [him]." (*Id.*) Plaintiff alleges that Starner's actions "inflam[ed] [his] hemorroidal tissue," and that he continues to suffer pain but is "ashame[d] and afraid to have someone look at [his] issue back there because of the trauma of what was done to [him]." (*Id.*) Plaintiff alleges that throughout the incident, Cintron and the unnamed deputy "[were] standing there and said nothing." (*Id.*) After the pat down, Starner and Cintron told Plaintiff to remove his clothes. (*Id.*) To facilitate the search, he was told to open his mouth, stick out his tongue, lift his genitals, and "turn around and spread [his] cheeks" so that officers could search his anal cavity with a flashlight. (*Id.*) Plaintiff ultimately pled guilty to one count of criminal possession of a controlled substance in the third degree, PL § 220.16(1), a class B felony. (*See* Starner Decl. Ex. 3 ("Certificate of Conviction"); Plea Tr. 8–9.)[1]

---

[1] The Court may take judicial notice Plaintiff's guilty plea and certificate of conviction. *See John v. Lewis*, No. 15-CV-5346, 2017 WL 1208428, at *5 n.11 (E.D.N.Y. Mar. 31, 2017) (taking judicial notice of statements made during the plaintiff's plea hearing "not for their truth" but for "their legal effect" in establishing probable cause for the plaintiff's arrest); *Parker v. Cummings*, No. 13-CV-3151, 2014 WL 2946144, at *3 (S.D.N.Y. June 30, 2014) ("The Court

Plaintiff asserts that he "suffer[s] daily from the abuse caused by" Defendants, "from the excessive use of force, sexual assault, cruel and unusual punishment, pain and suffering, assault and battery, [and] unreasonable search and seizures." (*Id.* at 7.) Plaintiff seeks a total of $1,500,000 in compensatory damages from Defendants, as well as "250,000 each for punitive" and "250,000 each nominal." (*Id.* at 9.)

B. Procedural History

The initial Complaint was filed in this Court on January 12, 2018. (Compl. (Dkt. No. 2).) Plaintiff filed the operative Amended Complaint on August 2, 2018. (Am. Compl.) Defendants filed their respective Motions To Dismiss on October 23, 2018. (County Defs.' Not. of Mot.; County Defs.' Mem. of Law in Supp. of Mot. ("County Defs.' Mem.") (Dkt. No. 47); County Defs.' Decl. in Supp. of Mot. ("County Defs.' Decl.") (Dkt. No. 46); Starner Not. of Mot.; Starner Mem. of Law in Supp. of Mot. ("Starner Mem.") (Dkt. No. 43); Starner Decl. in Supp. of Mot. ("Starner Decl.") (Dkt. No. 42).) Plaintiff did not file a response to either Motion, and on December 17 and 19, 2018, the Court deemed Defendants' respective Motions fully submitted. (Dkt. Nos. 54, 55.)

## II. Discussion

A. Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

---

may take judicial notice of [the plaintiff's plea] transcript and the sentencing disposition because they are matters of public record.").

(citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all

reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted).

### B. Analysis

Liberally construed, theAmended Complaint asserts claims for unlawful search and seizure and use of excessive force in violation of the Fourth Amendment, as well as for cruel and unusual punishment in violation of the Eighth Amendment. (*See generally* Am. Compl.)

County Defendants seek dismissal of the Amended Complaint for (1) failure to state a claim of municipal liability against Sullivan County; and (2) failure to state a Fourth or Eighth Amendment claim against Cintron. County Defendants also argue that Cintron is entitled to qualified immunity for his actions, and that any state law claims are barred for failure to plead that Plaintiff filed the required notice of claim. (*See generally* County Defs.' Mem.) Starner

similarly argues that Plaintiff fails to state a Fourth or Eighth Amendment claim, that he is entitled to qualified immunity, and that any state law claims are barred for failure to plead that Plaintiff filed the required notice of claim. (*See generally* Starner Mem.) The Court will address each argument separately to the extent necessary.

### 1. Claims Against Sullivan County

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (citation and italics omitted)). That is, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). Therefore, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–691). The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citation omitted). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it

amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Here, Plaintiff fails to allege the fifth element required to state a *Monell* claim.  Plaintiff does not allege the existence of any policy, any actions taken or decisions made by any Sullivan County policymaking officials, any systemic failures to train or supervise, or any practices so widespread that they practically have the force of law.  Plaintiff simply does not allege any factual indicia from which this Court could infer the existence of a policy or custom. Accordingly, because Plaintiff does not allege the fifth element required to state a *Monell* claim against Sullivan County, all claims against Sullivan County are dismissed.  *See McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *cf. Brown*, 520 U.S. at 404 ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality."); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (citation, alteration, and quotation marks omitted)); *Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case" (citing *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991))); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the

alleged unconstitutional violation." (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985))).

### 2. Claims Against Starner

Construed liberally, Plaintiff asserts claims for unlawful search and seizure and excessive use of force in violation of the Fourth Amendment.[2]

### a. Unlawful Search

### i. Pat Down Incident to Arrest

It is not clear from the Amended Complaint whether Plaintiff intended to assert a Fourth Amendment claim based on the absence of probable cause to conduct a search of his person, but the Court will construe Plaintiff's allegations as attempting to make such a claim. Starner argues that the pat down was lawful because it was performed incident to Plaintiff's lawful arrest. (*See* Starner Mem. 13–14.) "[O]nce a police officer has probable cause to effect an arrest, he has the authority to conduct a search incident to it regardless of the nature of the offense." *Joyner v. City of Mount Vernon*, No. 09-CV-8982, 2011 WL 3296083, at \*4 (S.D.N.Y. July 25, 2011) (citing *U.S. v. Robinson*, 414 U.S. 218, 224 (1973)); *see also U.S. v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (same). Starner argues that the Court may take judicial notice of statements made during Plaintiff's plea hearing, including Plaintiff's admissions that he was found to be in possession of

---

[2] Plaintiff also asserts a claim for cruel and unusual punishment in violation of the Eighth Amendment. However, because it is clear from Plaintiff's allegations that he was not in custody pursuant to a conviction at the time of these incidents, he may not assert claims under the Eighth Amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."); *Lindsey v. Butler*, 43 F. Supp. 3d 317, 325 (S.D.N.Y. 2014) ("[The] [p]laintiff claims that the officers subjected him to excessive force in violation of the Eighth Amendment. The Court must dismiss this claim because the Eighth Amendment attaches only after conviction."), *on reconsideration in part*, No. 11-CV-9102, 2014 WL 5757448 (S.D.N.Y. Nov. 5, 2014). Plaintiff's Eighth Amendment claim is therefore dismissed.

a controlled substance when he was arrested.  (Starner Mem. 10, 13–14; *see also* Plea Tr. 5–6

(noting that Plaintiff had illegal drugs worth $2,000 on his person at the time of his arrest), 48–

49 (admitting to possession of 44 grams of heroin at the time of arrest)).  Although it is

appropriate to take judicial notice of statements made at a plea hearing for their legal effect, i.e.,

as evidence that Plaintiff pled guilty, the Court may not take accept the statements for their truth,

i.e., that Plaintiff was found to be in possession of controlled substances at the time of his arrest.

*See John*, 2017 WL 1208428, at *5 n.11 (taking judicial notice of "statements made during [the]

[p]laintiff's . . . plea hearing" for their legal effect, but "not for their truth, i.e., that [the]

[p]laintiff, in fact, committed the crime of disorderly conduct, that he was making his plea

'voluntarily,' or that there was or was not probable cause for [the] [p]laintiff's two arrests").

However, even if the Court could consider the statements for their truth, it remains unclear

whether Plaintiff was in fact under arrest and whether illegal substances had been discovered at

the time of Plaintiff's initial pat down, and thus it is not possible to discern whether sufficient

probable cause existed at the time of the search.  *See Arizona v. Johnson*, 555 U.S. 323, 327

(2009) ("To justify a pat[ ]down of the driver or a passenger during a traffic stop, . . . the police

must harbor reasonable suspicion that the person subjected to the frisk is armed and

dangerous."); *Sibron v. New York*, 392 U.S. 40, 63 (1968) ("It is axiomatic that an incident

search may not precede an arrest and serve as part of its justification."); *Carlos Quiles & Carlos

Rodriguez v. City of New York*, No. 15-CV-1055, 2016 WL 6084078, at *9 (S.D.N.Y. Oct. 12,

2016) (noting that a "pat[ ]down search cannot be justified as a search incident to [a] lawful

arrest" if "at the time that the officers pat [the plaintiff] down, he had not yet" engaged in any

conduct that would support probable cause for his arrest); *Evans v. Solomon*, 681 F. Supp. 2d

233, 248 (E.D.N.Y. 2010) ("[P]robable cause to arrest obtained after a search cannot validate an

otherwise unlawful search."); *Dasher v. Hughes*, No. 95-CV-3913, 2000 WL 726865, at *3–4 (S.D.N.Y. June 6, 2000) (upholding jury verdict in favor of the plaintiff on unlawful frisk claim because the jury could have rationally determined that, despite having probable cause to stop the car and to pat down other passengers based on their furtive movements, the defendant lacked reasonable suspicion to pat down the plaintiff who was "calm[ly] . . . standing beside him some distance away from the car").[3]

Furthermore, Plaintiff's description of the pat down, which involved a search of his pockets and an allegedly rough frisk, suggests that the pat down may have "exceeded the scope of a simple pat down." *Tyus v. Newton*, No. 13-CV-1486, 2016 WL 6090719, at *10 (D. Conn. Oct. 18, 2016) (denying summary judgment on unlawful search claim where the plaintiff testified that the defendant "searched inside the pockets of [the plaintiff's] pants to seize an assisted-folding knife, and also repeatedly grabbed [the plaintiff's] crotch and buttocks" because the search may have "exceeded the bounds of a pat down search for narcotics"). Therefore, at this early stage, the Court declines to dismiss Plaintiff's unlawful search claim based on his initial pat down.[4]

---

[3] Starner did not argue that Plaintiff was or could have been arrested for the broken tail light that served as the basis for the stop. Furthermore, it is not beyond dispute that the car in which Plaintiff was a passenger in fact had a broken tail light, as Plaintiff alleges that the car was stopped "for a *suppose[d]* tail light out," suggesting that Plaintiff disputes the basis of the stop. (Am. Compl. 1.) *See Tyus v. Newton*, No. 13-CV-1486, 2016 WL 6090719, at *9 (D. Conn. Oct. 18, 2016) (denying summary judgment on unlawful search claim where there was a dispute of fact as to whether the plaintiff failed to illuminate his rear license plate, the stated basis for the stop). Thus, taking all allegations in the Amended Complaint as true and drawing all inferences in Plaintiff's favor, the purported broken tail light cannot serve as probable cause for the stop.

[4] Although not raised, the Court notes that Plaintiff's claim may be barred by the *Heck* Doctrine. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*,

## ii.  Strip Search

The Fourth Amendment "protects individual privacy against certain kinds of governmental intrusion," *Katz v. United States*, 389 U.S. 347, 350 (1967), and its protections extend to prisoners and pretrial detainees, *see Bell v. Wolfish*, 441 U.S. 520, 545, 559 (1979). "Regardless of who performs the search, a visual body cavity search, such as the one conducted here, is invasive:  'A strip search that involves a stranger peering without consent at a naked individual, and in particular at the most private portions of that person's body, is a serious invasion of privacy.'"  *Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016) (quoting *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 344–45 (2012)).  Thus, the Fourth Amendment requires "all searches conducted [in custody], including strip searches, to be reasonable."  *Holland v. City of New York*, 197 F. Supp. 3d 529, 542 (S.D.N.Y. 2016) (citing *Hodges v. Stanley*, 712 F.2d 34, 35 (2d Cir. 1983) (per curiam)).  "[A] misdemeanor arrestee may not be strip searched in the absence of 'an individualized reasonable suspicion that a misdemeanor arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest.'"  *Sims v. Farrelly*, No. 10-CV-4765, 2013 WL

---

512 U.S. 477, 487 (1994).  In the context of Fourth Amendment claims, if "[a] finding that the searches pursuant to which the [contraband that formed the basis of a conviction] were procured were unlawful would necessarily imply the invalidity of the underlying conviction," then the claim is barred.  *Bogle v. Melamed*, No. 09-CV-1017, 2012 WL 1117411, at *3 (E.D.N.Y. Mar. 30, 2012); *see also Black v. Blackmun*, No. 11-CV-2372, 2011 WL 6019394, at *2 (E.D.N.Y. Dec. 1, 2011) ("Because [the plaintiff's] conviction hinged directly on the weapons procured during this allegedly unlawful search, an award of damages would necessarily imply the invalidity of his state court conviction. [The plaintiff] is therefore precluded from recovering damages on these claims under § 1983."); *Kaminski v. Hayes*, No. 06-CV-1524, 2009 WL 3193621, at *6 (D. Conn. Sept. 30, 2009) (dismissing Fourth Amendment claim as barred by *Heck* because "[i]t is apparent that the entire evidentiary basis for the charged offenses . . . derives from a single search that is now being challenged as part of a [§] 1983 action," and the plaintiff pled guilty to the underlying charges resulting from that search).  In the absence of a developed factual record or any legal argument on this point, however, the Court will not dismiss Plaintiff's unlawful search claim on this basis at the motion-to-dismiss stage.

3972460, at *7 (S.D.N.Y. Aug. 2, 2013) (some quotation marks omitted) (quoting *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008)). "The same rule applies to felony narcotics arrestees." *Id.* (collecting cases).

Strip searches of detainees in custody do not violate the Constitution. *See Florence*, 566 U.S. at 324, 339 (holding that suspicionless strip search of detainee arrested for a minor offense prior to his admission into the general jail population did not violate Fourth Amendment); *Myers v. City of New York*, No. 11-CV-8525, 2012 WL 3776707, at *9 (S.D.N.Y. Aug. 29, 2012) (holding that suspicionless strip searches of non-felony pretrial detainees at intake and upon leaving facility for court appearances were constitutional). Nevertheless, there must be "individualized reasonable suspicion" of an arrestee in order to justify a strip search. *Sims*, 2013 WL 3972460, at *7 (denying summary judgment on unlawful strip search claim where search was performed based on "the narcotics nature of the incident, the easy concealability [sic] of crack cocaine, and the criminal history of many of the subjects," because, inter alia, "no particular acts [were] attributed to Plaintiff that would raise reasonable suspicion that he was concealing drugs"); *see also Sarnicola v. County of Westchester*, 229 F. Supp. 2d 259, 273 (S.D.N.Y. 2002) ("[N]o court has ever held that being arrested for a narcotics-related crime automatically gives rise to reasonable suspicion that drugs are being carried in an arrestee's body cavities, so as to justify a strip search or visual body cavity inspection."). Because the Court cannot determine from the facts alleged in the Amended Complaint whether Plaintiff was strip searched pursuant to individualized reasonable suspicion, it would be premature at this stage to find that Plaintiff has failed to state a claim.

Nevertheless, Starner is entitled to qualified immunity with respect to Plaintiff's claims based on his strip search. (Starner Mem. 16–20.) The Second Circuit has made clear that it

"ha[s] never held that the Fourth Amendment is violated by a suspicionless search (strip search or visual body cavity search) of a person arrested for felony drug possession." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013) (affirming grant of qualified immunity because "a reasonable officer . . . would not have understood that conducting an otherwise suspicionless visual body cavity search of a person arrested for a felony drug offense was unlawful"). To date, the Second Circuit still has not clearly held that such searches violate the Constitution, and the Court cannot find a Supreme Court case so holding. Because it is not clearly established that suspicionless visual body cavity searches of detainees arrested for felony drug offenses violate the Fourth Amendment, Starner is entitled to qualified immunity on this claim. *See Gonzalez*, 728 F.3d at 162 (affirming dismissal of Fourth Amendment claim for suspicionless strip search of felony arrestee based on qualified immunity). Plaintiff's claim based on his strip search is therefore dismissed.

### b. Excessive Force

Plaintiff alleges that Starner used excessive force in performing pat downs pursuant to Plaintiff's arrest. Specifically, Plaintiff alleges that Starner pulled his pants "up his ass" in a way that exacerbated his pre-existing hemorrhoids, and grabbed his genitals in a sexual manner. "Claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other seizure of a free citizen [are] analyzed under the Fourth Amendment and its reasonableness standard." *Usavage v. Port Auth. of N.Y. & N.J.*, 932 F.Supp.2d 575, 591 (S.D.N.Y. 2013) (citation and quotation marks omitted). Likewise, "[s]exual misconduct by a police officer during a 'seizure' is analyzed under the Fourth Amendment." *Wright v. City of Waterbury*, No. 07-CV-306, 2011 WL 1106217, at *6 (D. Conn. Mar. 23, 2011) (citing, inter alia, *Poe v. Leonard*, 282 F.3d 123, 136–37 (2d Cir. 2002)). "[T]he reasonableness question is

whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances . . . without regard to their underlying intent or motivation." *Mickle v. Morin*, 297 F.3d 114, 120 (2d Cir. 2002). When evaluating whether the use of force was reasonable, courts are to consider the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir.2010) (same). Courts have allowed excessive force claims to stand where the plaintiff suffered only minor injuries. *See, e.g.*, *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) ("[W]e have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising."); *Sforza v. City of New York*, No. 07-CV-6122, 2009 WL 857496, at *15 (S.D.N.Y. Mar. 31, 2009) ("A plaintiff need not demonstrate serious injury to prevail in an excessive force claim; bruising and other nonpermanent injuries are sufficient.").

At this early stage, the Court cannot say as a matter of law that the amount of force used was objectively reasonable. Starner argues that Plaintiff's injuries from the pat downs are "de minimis," which are insufficient to state an excessive force claim. (Starner Mem. 13.) However, "[i]t is the force used, not the injuries caused, which must be determined to be de minimis as a matter of law." *Campbell v. City of New York*, No. 06-CV-5743, 2010 WL 2720589, at *8 (S.D.N.Y. June 30, 2010); *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009) ("Even in the arrest context, . . . the Second Circuit has indicated that a very minimal injury is sufficient to trigger potential [Fourth Amendment] liability." (citing *Robison v. Via*, 821 F.2d 913 (2d Cir. 1987))). Regarding Starner's use of force, the use of even de minimis

force that serves no purpose is not objectively reasonable. *See Lindsey*, 43 F. Supp. 3d at 327 (noting that where there is no evidence "reflecting a reason for the use of any force during the interrogation, . . . the use of more than de minimis force, if even that, . . . would not be objectively reasonable"); *Yang Feng Zhao*, 656 F. Supp. 2d at 391 (S.D.N.Y. 2009) (holding that during interrogation at police precinct, where there is "no reason for any use of force," "any force is potentially illegitimate"); *Love v. Town of Granby*, No. 03-CV-1960, 2004 WL 1683159, at *5 (D. Conn. July 12, 2004) ("Where there is no need for force, *any* force used is constitutionally unreasonable." (alteration omitted)).

The Amended Complaint does not include any facts suggesting that Plaintiff resisted his search or arrest, or identify any reason that his pat down was performed in a way that was allegedly painful. Without the benefit of a developed record, the Court cannot say as a matter of law that the force with which Starner searched Plaintiff was objectively reasonable, even if Starner had authority to search Plaintiff. *See Scalpi v. Town of E. Fishkill*, No. 14-CV-2126, 2016 WL 858944, at *11 (S.D.N.Y. Feb. 29, 2016) (holding that although "some bodily intrusions may be provably accidental or de minimis and thus constitutionally reasonable," the plaintiff sufficiently stated a Fourth Amendment excessive force claim where she described a "rough and excessive" search and alleged that she "felt pain" as a result of the force used (citations, alteration, and quotation marks omitted)); *see also Collier v. Locicero*, 820 F. Supp. 673, 679 (D. Conn. 1993) (explaining that "evidence indicating that a frisk was 'excessively rough or intrusive' is sufficient to raise questions of fact" regarding a Fourth Amendment claim). Plaintiff "does more than simply complain of incidental contact with sensitive areas," *Scalpi*, 2016 WL 858944, at *11; *cf. Wright*, 2011 WL 1106217, at *6 (dismissing a Fourth Amendment claim where the police officer "cupped" the male plaintiff's groin area on two occasions during a

pat down), he alleges that he alerted Starner that his pat down involved an excessive amount of force, but that Starner nonetheless proceeded with precisely the same force, causing Plaintiff severe pain.  "Accordingly, the Court cannot say—at least at the motion to dismiss stage—that the search conducted by [Starner], as described by Plaintiff, was reasonable."  *Scalpi*, 2016 WL 858944, at *11.  Therefore, Starner is not entitled to dismissal on this claim.[5]

### 3.  Claims Against Cintron

Construed liberally, the Amended Complaint alleges a failure to intervene claim against Cintron for failing to prevent Starner's use of excessive force.[6]

"A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers."  *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988).  "An officer who does not personally inflict the injury at the core of an excessive use of force claim may still be liable under § 1983 if the officer both fails to intervene to prevent the harm, in spite of a 'realistic opportunity' to do so, and 'observes or has reason to know . . . that excessive force is being used.'"  *Scalpi*, 2016 WL 858944, at *13 (quoting *O'Neill*, 839 F.2d at 11, and *Anderson v. Bremen*, 17 F.3d 552, 557 (2d Cir. 1994)).  "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a

---

[5] To the extent Starner raised a qualified immunity defense with respect to this claim, dismissal on grounds of qualified immunity is inappropriate at this stage because "in the context of excessive force, the Fourth Amendment reasonableness inquiry tends to converge with the qualified immunity reasonableness inquiry."  *Wang*, 2012 WL 119591, at *11 (citing *Cowan v. Breen*, 352 F.3d 756, 764 & n.7 (2d Cir. 2003)).  "Having determined that [P]laintiff's claim for excessive force" survives Starner's Motion To Dismiss, "the court likewise concludes that [he is] not entitled to [dismissal] on the basis of qualified immunity."  *Id.*

[6] Plaintiff's Fourth Amendment claim against Cintron for the unlawful strip search is dismissed, as Cintron is entitled to qualified immunity for the same reasons as Starner.  *See supra* Section II.B.2.a.ii.

reasonable jury could not possibly conclude otherwise." *Anderson*, 17 F.3d at 557. "Courts have found that, where officers assault an individual so quickly that a fellow officer does not have a realistic opportunity to intercede, the witness officer is not liable for the excessive force." *Phillips v. Roy*, No. 08-CV-878, 2011 WL 3847265, at *6 (N.D.N.Y. Aug. 29, 2011); *see also Lehal v. United States*, No. 13-CV-3923, 2015 WL 9592706, at *8 (S.D.N.Y. Dec. 29, 2015) ("Courts may look to the length of the incident, inter alia, to determine whether an officer had a realistic opportunity to intervene." (italics omitted)).

County Defendants argue that "it is not plausible that Cintron would have noticed any sexual intent on the part of Starner where Plaintiff did not raise the issue at the time," and that the Amended Complaint "does not allege any facts as to why or how a reasonable officer would intervene in" the scenarios alleged in the Amended Complaint. (County Defs.' Mem. 12.) However, based on the limited allegations in the Amended Complaint, the Court cannot conclude as a matter of law that Cintron had no reason or opportunity to intervene. *See Anderson v. Waterbury Police Dep't*, No. 14-CV-829, 2017 WL 1157843, at *14 (D. Conn. Mar. 28, 2017) ("Whether the officer had a realistic opportunity to intervene is normally a question for the jury, unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." (quoting *Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014))). Plaintiff alleges that, in Cintron's presence, Starner pulled Plaintiff's pants up such that they caused great pain, including exacerbating his hemorrhoids. Although Plaintiff did not inform the officers he was suffering from hemorrhoids, he did cry out during each alleged incident that the pants were "going up [his] ass," after which Starner pulled Plaintiff's pants up twice more. (*See* Am. Compl. 1, 3.) Construing all inferences in Plaintiff's favor, the Court cannot determine at the motion-to-dismiss stage that Cintron either was not aware that the force used was excessive or did not have

an opportunity to intercede. *See Barnes v. Fischer*, No. 13-CV-164, 2018 WL 5660414, at *8 (N.D.N.Y. Mar. 16, 2018) (holding the plaintiff "sufficiently allege[d] that [the] [o]fficers were present when the alleged unconstitutional assaults were occurring, and he therefore establishe[d] questions of fact concerning whether those [o]fficers, by merely standing by, violated their constitutional duties"), *adopted by* 2018 WL 4660380 (N.D.N.Y. Sept. 28, 2018); *see also Merrill v. Schell*, 279 F. Supp. 3d 438, 444 (W.D.N.Y. 2017) ("Because [the plaintiff]'s [excessive force] claim against [one defendant] survives a motion to dismiss, his claim that [another officer] failed to intervene does as well."). Therefore, County Defendants' Motion To Dismiss Plaintiff's failure to intervene claim against Cintron is denied.

### 4. State Law Claims

To the extent Plaintiff intended to assert state law claims, those claims must be dismissed for failure to file a notice of claim. Under New York law, "as a condition precedent to bringing a claim against a municipality, a plaintiff must file a notice of claim within 90 days after her claim accrues." *Russell v. Westchester Cmty. Coll.*, No. 16-CV-1712, 2017 WL 4326545, at *5 (S.D.N.Y. Sept. 27, 2017) (citing N.Y. Gen. Mun. Law § 50-e(1)(a)); *see also Olsen v. County of Nassau*, No. 05-CV-3623, 2008 WL 4838705, at *1 (E.D.N.Y. Nov. 4, 2008) ("As a 'condition precedent' to commencing a tort action against New York municipalities, or any of their officers, agents, or employees, New York General Municipal Law § 50-e requires plaintiffs to file a notice of claim within ninety days after the claim arises."); N.Y. Gen. Mun. Law § 50-k(6) ("No action . . . shall be prosecuted or maintained against the city . . . or any employee . . . unless notice of claim shall have been made and served upon the city . . . ."). This rule applies in federal court because "[s]tate claims brought under state law in federal court are subject to state procedural rules." *Russell*, 2017 WL 4326545, at *5 (citation omitted). "Federal courts do not

have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice." *Gibson v. Comm'r of Mental Health*, No. 04-CV-4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006). Further, "the burden is on [the plaintiff] to demonstrate compliance with the notice of claim requirements." *Peritz v. Nassau County Bd. of Coop. Educ. Servs.*, No. 16-CV-5478, 2019 WL 2410816, at *4 (E.D.N.Y. June 7, 2019) (citations omitted); *see also Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390 (E.D.N.Y. 2013) ("To survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed." (citing, inter alia, N.Y. Gen. Mun. Law § 50-e(1)(b))).

Because Plaintiff failed to affirmatively plead that he filed a notice of claim with respect to any state law claims, those claims are dismissed.

### III. Conclusion

For the foregoing reasons, Sullivan County's Motion To Dismiss is granted, and Starner's Motion to Dismiss is granted in part and denied in part. Plaintiff's claims against Sullivan County are dismissed without prejudice, as are his state law claims against all Defendants and his Fourth and Eighth Amendment claims based on his strip search. Plaintiff may file a second amended complaint with the Court within 30 days of the date of this Opinion. Plaintiff should include within that second amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff should also consider addressing the alleged deficiencies in his Complaint raised by Defendants but not considered by the Court. Plaintiff is further advised that the second amended complaint will completely replace, not supplement, the instant Amended Complaint. The second amended complaint must contain all of the claims, defendants, and factual allegations that Plaintiffs wish the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims dismissed without

prejudice may be dismissed *with* prejudice, and the case will go forward solely on Plaintiff's

Fourth Amendment excessive force and failure to intervene claims.

The Clerk of the Court is respectfully requested to terminate the pending Motions, (Dkt.

Nos. 41, 45), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED:     September 19, 2019
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE